# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MODESTA LUNA and MEGAN VOEKS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> UNITED COLLECTION BUREAU, INC., <br><br> Defendant. | Case No.: 19-cv-979 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Modesta Luna is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Megan Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

6. Defendant United Collection Bureau, Inc. ("UCB") is a foreign corporation with its principal offices located at 5620 Southwyck Boulevard, Toledo, OH 43614.

7. UCB is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

8. UCB is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. UCB is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10. UCB is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Related to Plaintiff Luna*

11. On or about July 30, 2018, Plaintiff Luna was mailed an account statement associated with a "Macy's" store-branded credit card account with an account number ending in 4021. A copy of this account statement is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, which was used only for personal, family, and household purposes, including the purchase of goods at Macy's stores.

13. Exhibit A includes the following representations:

| Payment Information | |
|---|---|
| New Balance | $1,896.26 |
| Minimum Payment Due | $663.68 |
| Payment Due Date | August 26, 2018 |

14. Exhibit A thus states that, as of July 30, 2018, the account had a "New Balance" of $1,896.26, with a "Payment Due Date" of August 26, 2018, and a "Minimum Payment Due" of $663.68.

15. On or about August 2, 2018, UCB mailed a debt collection letter to Plaintiff Luna regarding the same "Macy's" store-branded credit card account with an account number ending in 4021. A copy of this letter is attached to this complaint as Exhibit B.

16. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Luna inserted by computer.

17. Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

18. Upon information and belief, Exhibit B is the first written communication UCB mailed to Plaintiff Luna regarding the alleged debt referenced in Exhibit B.

19. Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

20. Additionally, Exhibit B includes the following representations:

| | |
|---|---|
| Creditor: | DEPARTMENT STORES NATIONAL BANK (DSNB) |
| Regarding: | MACY'S |
| Last Four Digits of Creditor Account Number: | XXXXXXXXXX4021 |
| United Collection Bureau, Inc. Reference Number: | ▇▇▇1886 |
| Account Balance: | $1896.26 |

3

21. Furthermore, Exhibit B features a remittance slip, which includes the following representations:

```
PLEASE RETURN THIS PORTION WITH PAYMENT. DO NOT ATTACH CHECK TO STUB.
PLEASE MAKE YOUR PAYMENT PAYABLE TO DSNB.

Creditor:                                    DEPARTMENT STORES NATIONAL BANK (DSNB)
Regarding:                                   MACY'S
Last Four Digits of Creditor Acct. Number:   XXXXXXXXXX4021
Account Balance:                             $1896.26
United Collection Bureau, Inc. Reference No:           1886
United Collection Bureau, Inc. Telephone No:  1-800-299-0979

REMIT TO:

UNITED COLLECTION BUREAU, INC.
PO BOX 1448
MAUMEE OH 43537
```

22. Exhibit B, mailed on August 2, 2017, just a few days after Exhibit A was mailed to Plaintiff Luna, thus represents only that Plaintiff owes an "Account Balance" of $1,896.26 and fails to indicate that Plaintiff could return her account to a current status by making a minimum payment.

23. By only listing the full "Account Balance" of Plaintiff Luna's alleged debt, Exhibit B falsely represents that such debt has been accelerated.

24. Upon information and belief, the acceleration clause in the underlying credit agreement governing the alleged debt referenced in Exhibits A & B provided for *optional* acceleration upon the consumer's default.

25. By mailing the August account statements, Exhibit A, Department Stores National Bank ("DSNB"), the creditor of Plaintiff's alleged debt, waived its right to accelerate the maturity of the account before August 30, 2018, and as of August 2, 2018, when UCB mailed its letters, DSNB had not exercised the optional acceleration clause.

26. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B.

4

Exhibit B indicates that the total balance of Plaintiff Luna's alleged debts is due while Exhibit A indicate that only a "Minimum Payment Due" is due to the creditor as of the date of the letter. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' ").

27. Plaintiff Luna was misled and confused by Exhibits A & B.

28. The unsophisticated consumer would be misled and confused by Exhibits A & B.

*Facts Related to Plaintiff Voeks*

29. On or about August 2, 2018, UCB mailed a debt collection letter to Plaintiff Voeks regarding an alleged debt associated with a "Sears" store-branded credit. A copy of this letter is attached to this complaint as Exhibit C.

30. Upon information and belief, the alleged debt referenced in Exhibit C was incurred by use of a credit card, which was used only for personal, family, and household purposes, including the purchase of goods at Sears stores.

31. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Voeks inserted by computer.

32. Upon information and belief, Exhibit C is a form debt collection letter used by Defendant to attempt to collect alleged debts.

33. Upon information and belief, Exhibit C is the first written communication UCB mailed to Plaintiff Voeks regarding the alleged debt referenced in Exhibit C.

5

34. <u>Exhibit C</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

35. <u>Exhibit C</u> also includes the following representation:

| | |
|---|---|
| Creditor: | CITIBANK, N.A. |
| Regarding: | SEARS CARD |
| Last Four Digits of Creditor Account Number: | XXXXXXXXXXXX8052 |
| United Collection Bureau, Inc. Reference Number: | ▇3209 |
| New Balance: | $2002.49 |
| Minimum Payment Due: | $447.00 |

36. Additionally, <u>Exhibit C</u> features a remittance slip, which includes the following representation:



37. Finally, <u>Exhibit C</u> includes the following representation:

> As of the date of this letter, you owe the above stated New Balance amount. Because of interest and/or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after your payment is received. For further information, you may write to our office or call the telephone number within this communication.

38. By stating "…you owe the New Balance amount. Because of interest and/or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount show above, an adjustment may be necessary…" and including the full balance of Plaintiff Voek's alleged debt on the remittance slip, <u>Exhibit C</u> is unclear whether

UCB is collecting the entire $2,002.49 balance or just the $447.00 that was represented to be the "Minimum Payment Due."

39. It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Whichever number UCB is truly collecting, it need only state that amount in the letter.

40. The different amounts on Exhibit C render Exhibit C confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount UCB was actually attempting to collect.

41. Plaintiff Voeks was misled and confused by Exhibit C.

42. The unsophisticated consumer would be misled and confused by Exhibit C.

### *The FDCPA*

43. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character,

7

amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

44. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

45. 15 U.S.C. § 1692e generally prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."

46. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

47. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

9

48. 15 U.S.C. § 1692g(a) states:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

49. The failure to disclose the information required by 15 U.S.C. § 1692g(a) in a non-confusing manner *per se* violates the FDCPA. No additional materiality inquiry is necessary. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016).

50. 15 U.S.C. § 1692g(b) states, in relevant part: " Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

### *The WCA*

51. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

52. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

53. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

10

54. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

55. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

56. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

57. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

58. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

11

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

59. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

60. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

61. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

62. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

63. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

64. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. Count I is brought on behalf of Plaintiff Luna.

66. By representing the balance of Plaintiff Luna's alleged debt as having been accelerated, Exhibit B falsely represents the amount of such debt that is currently owed to the creditor.

67. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1).

## COUNT II – WCA

68. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. Count II is brought on behalf of Plaintiff Luna.

70. By representing the balance of Plaintiff Luna's alleged debt as having been accelerated, Exhibit B falsely represents the amount of such debt that is currently owed to the creditor.

71. Exhibit B thereby violates the FDCPA.

72. UCB is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

73. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDCPA

74. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. Count III is brought on behalf of Plaintiff Voeks.

76. By stating "…you owe the New Balance amount. Because of interest and/or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount show above, an adjustment may be necessary…" and including the full balance of Plaintiff Voek's alleged debt on the remittance slip, Exhibit C is unclear whether UCB is collecting the entire balance or just the "Minimum Payment Due."

13

77. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1).

## COUNT IV – WCA

78. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

79. Count IV is brought on behalf of Plaintiff Voeks.

80. By stating "…you owe the New Balance amount. Because of interest and/or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount show above, an adjustment may be necessary…" and including the full balance of Plaintiff Voek's alleged debt on the remittance slip, Exhibit C violates the FDCPA.

81. UCB is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

82. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

83. Plaintiffs bring this action on behalf of two classes.

84. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt owed to DSNB, (d) which was incurred for personal, family, or household purposes, (e) where the letter was sent between July 9, 2018 and July 9, 2019, inclusive, (f) that was not returned by the postal service. Plaintiff Luna is the proposed class representative for Class I.

14

85. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between July 9, 2018 and July 9, 2019, inclusive, (e) that was not returned by the postal service. Plaintiff Voeks is the proposed class representative for Class II.

86. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

87. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant complied with the FDCPA and WCA.

88. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

89. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

90. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

91. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 9, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com